Thank you. Counsel, we appreciate you participating in what is somewhat of an unusual way of proceeding, but a way that allows us to to talk with you about your cases. And the case we're going to hear at noon now is Irizarry v. Abbott Labs, 19-3574. Apologies for the delays in starting. Judge Phipps and I were completing business on our prior panel. So we will hear, I guess, from Mr. Bench. Thank you. Mr. Attorney Andrew Teigenbensch and I argue on behalf of your clients, Andrea Azari and Manuel Azari. I'd like to reserve three minutes for rebuttal, if I may. You may. Thank you. May it please the Court. The fundamental question in this appeal is what type of evidence and how much evidence is required to make a plausible claim when you're making out a medical device manufacturing defect claim. What I would like to know before you start talking about what you need to allege is what is your theory? And looking at your complaint, certain allegations, not allegations, but assertions could support different theories. One theory is there was an approved PMA that led to a defective device. Correct. There could be a theory that the approved PMA itself was a problem and that's why it led to a defective device. Or is there a third possibility, which is the defendants failed to produce in accordance with the PMA. You have different allegations and that is important for us to understand which theory are you adopting. The theory, I believe, as you laid them out, Judge Schwartz, is the third theory, which is that there was a PMA, the PMA was approved by the FDA, and that the device was manufactured in derogation of that pre-market approval. So what allegations would tell us, you're basically saying Abbott failed to comply with the PMA. They did a different manufacturing process. If that's your allegation, what's your evidence to support that? The evidence, your honor, is essentially four prongs, which we lay out in the brief and in the complaint. They are, essentially, the first that the, the device didn't, or rather injured the appellant, injured him severely. The second is that the doctor opined that the device malfunctioned during surgery. Third is that there were manufacturing defects in the lot, which we believe are similar, and that an expert has also opined are similar to the defects that led to the injury sustained by the appellant. Also, that there is an expert who has opined, based on his statistical analysis of the manufacturing lot, that it is likely the manufacturing defect exists. And finally, that Abbott, who we believe the device was returned to, now we believe that that should be held against them in establishing that there was a manufacturing defect. So you want us to infer from the fact your client was injured and there were two other MDRs, that that in of itself is sufficient to infer that Abbott failed to comply with the approved manufacturing process? Yes, your honor, and also with the report of the expert indicating that his analysis and manufacturing defect. Are there two other MDRs or one other MDR? There are two other MDRs, your honor, regarding the failures. You're asking us to consider this expert report. This was one of the arguments presented to us. Rose V. Bartle, which is our Third Circuit case, would suggest that we should not consider the expert report because it contains what would be akin to testimonial evidence as opposed to documentary evidence, and that it would be inappropriate, Act 12B.6, to consider it. How do we reconcile your position with Bartle? Your honor, considering Bartle, I think that we make three main arguments considering whether or not the opinion of an expert should be considered. The first thing that I would note is that we think that opinions of experts are different. Take the example, for instance, of a claimant who claims a broken bone and pleads in their complaint, for instance, that a doctor says that their arm is broken. Your honor, in a case like that, it is absolutely routine and normal practice to put into the pleading that the bone is broken. That is, in fact, an opinion of an expert opining about a fact in the world. In a like way, an accident reconstruction expert often will go out to a scene and, based on the reconstruction of the accident, can conclude that an offendant was feeding. But isn't the difference here, though, you're asking us to take from your expert what is tantamount to a legal conclusion, that is, there was a manufacturing defect. That's a legal conclusion. Do you agree that's a legal conclusion? Yes and no. It's a mixed conclusion of fact and law. As I was about to get to with the expert who opines as to a defendant who's feeding, an expert who will opine to the reconstruction of the accident, your honor, goes out there and determines this defendant was going 60 miles an hour or was going 70 miles an hour in a 35. That is actually a legal conclusion as well as a factual conclusion, because if he was feeding, you know, that is a conclusion about the nature of the law as well as being a factual conclusion. We think that our expert's doing exactly the same thing here. He's essentially saying there is a manufacturing process and this item was manufactured in derogation of that manufacturing process, bringing them, making Abbott liable under the Parallel Claims Amendment Act. But he doesn't say what caused it to malfunction. Isn't that the deficiency complaint? Your honor, the exact causative agent is probably not known. However, what I would say back to that. I would just stop you there. It's not known. We appreciate your candor. There's not an assertion that's not purportable, but isn't it just as possible that this happened as a result of some negligence on behalf of the hospital or the cardiologist? That is possible, your honor. I would suggest that would be Abbott's responsibility to plead in with the doctors to show that. Wait, wait, wait. I mean, you're bringing a product defect case and you aren't. I mean, at one level, what if the hospital stored it at, what if they froze this product? You don't even have the deficient product. It could have happened in transit. It doesn't necessarily have to involve the doctor. You have to come up with plausible allegation. This isn't Conley v. Gibson where just, you know, you pleaded something that could work later. It's the fact that a plaintiff is injured, that the product had a defect in it, that it didn't work as intended doesn't necessarily mean that it had a defect. It could have not worked as intended for a bunch of reasons. At the end of the day, it strikes me as your case has two big problems. One, you got a black box on the PMA. You don't know what the PMA was. You might have some equities for saying, hey, it's really hard and give me some leniency on the PMA because I don't know that absent discovery. But the second of your big problems is you don't have the device. And so you don't know anything about the device or how it's manufactured. And it's pretty bold to try to hold that against the manufacturer when we don't even know that the manufacturer received custody of the product. Your Honor, the pleading does state that we believe industry practice is such that, and I believe our expert says his term is inconceivable, that the device would not have been returned to the manufacturer. Let me stop you at that point. I want to go back to something you said. You said that you were entitled to an inference against the manufacturer because of the fact that the device is not available. Did you raise that before the district court? We did, Your Honor. Where did you raise it? Your Honor, it's stated in the complaint that it is inconceivable that the device was not returned to the manufacturer. And it's also stated in the complaint in an allegation, I believe it's attachment B, the third amendment complaint, that the manufacturer states that they do not have it. But did you raise the point that you were entitled to an inference before the district court? It seems like you're raising that anew for us. Your Honor, I would say that it's fairly contained within the pleadings that we believe that the device was returned and that the manufacturer is now saying that they do not have it. Judge Fischer is asking you a different question, though. He's asking you whether you argued to the district court that you could infer from those assertions something against the defendant. I don't know if it was actively argued. I think it's a reasonable inference from the record, though. So, what I want to get at here is that what 12 and Lee and Ifill requires is that plaintiff state a plausible case. And we think that the different circuits have come to the decision of what constitutes a plausible case in different ways. The Seventh Circuit has decided Bosh v. Stryker. In fairness to Abbott, as we point out, that most circuits haven't adopted that and the pleading standard might be too lax. And a lot of the other circuits have adopted what Judge Smith required us to show in this case, which is that we both state how the device malfunctioned, how that malfunction was specifically in derogation of the PMA. Can I just stop you there? I don't understand. When I read this briefing, and I'll ask your opposing counsel questions in this regard, too, I felt like everyone was jumping the gun to preemption. That may be where all the action is, but if you want to state a claim, you have to state a claim under Pennsylvania law. Pennsylvania law does not require that you state a PMA, a parallel claim. That comes from preemption, and preemption is an affirmative defense. So when we look at when you state a claim under Pennsylvania law, when I'm reading your brief, I'm not seeing evidence that you've met your Pennsylvania allegations of negligence, strict liability, these other things. That's what you have to meet. Your opponent can come to you later and say, gee, you stated good claims under Pennsylvania law. Hey, you've got stated four good claims possibly, or you've stated no good claims. But we think your good claims under Pennsylvania law are preemptive. I don't know that you have a pleading obligation to plead non-preemptive claims. You may want to do that. But when I'm looking at your claims, I'm just looking, have you stated claims under the state law because they're state law claims that you think apply? And so I don't see too much that gets you through the elements of those state law claims because maybe your focus was to plead non-preemptive money. Your Honor, we believe, following the holdings of the Supreme Court law and regal, that if we're able to state a violation of the FDA preapproval, that that serves as identifying the duty which is breached by the manufacturer for a state law claim. We think that there are multiple cases in Pennsylvania that are cited in the brief. And in fact, if that were not the case, then none of these cases would ever be able to proceed, either in Pennsylvania courts or the federal courts. And they routinely do. So you're saying that in response to Judge Vips, that you have pled a claim because violations of FDA-approved processes are cognizable by a private party? That's true. As long as they're not a fraud on the FDA claim, which is not permitted by Buckman, as long as you plead specifically that it was a manufacturing defect, if the device was manufactured in derogation of the preapproval process, then the courts of the Third Circuit, the district courts, and state courts have routinely found that there's a claim. Yeah, but along that line, and I agree with what you've laid out there, but along that line, don't you run into regal? Don't you run into regal and where regal concluded without enough specifics, your claim can't go forward because the MDA preempts it? No, Your Honor. The MDA, what regal says on regal, and Justice Scalia was extremely explicit when he was writing regal, that parallel claims are permitted so long as you can show a derogation of the MDA process. So, if the device was manufactured in conformity with its MDA, then certainly the preemption and a very broad preemption would apply to bringing a claim against the manufacturer. However, if the device is manufactured in a way that does not comply with the PMA approval process, then a claim can be brought. Yeah, but that seems to be the shortcoming in your theory, is that you haven't been able to allege what the failure of the manufacturing process was that led to a specific defect. Thank you, Judge Fischer. And I want to get to that briefly here, because all that fumbling and equivocal require is that a plausible claim is permitted. We think that there are ways to get to what constitutes a plausible claim that don't necessarily require anything with specificity what the manufacturing defect was. We think that, in this case, the opinion of the expert, the fact that it malfunctioned, and the loss of the device all constitute plausible reasons to conclude that a case can be brought, at least to get through discovery to see what's going on here. Let me ask you a question about the nature of the claims that you're bringing. Does your theory of relief, every one of your claim theories, does it depend on there being a PMA violation? It does, Your Honor. Okay, so you aren't, so I mean at one level, okay, so if there is no plausible PMA violation, then you don't say the point. Candidly, I believe that's what the law requires, Your Honor. Okay. Okay, Judge Fischer, do you have any further questions for counsel before we hear from his adversary? I have none. Okay, Judge Fitz? No. Okay, counsel, we'll have you back on rebuttal. Thank you, Judge. Okay, Ms. Fitz. Good afternoon, the court, counsel, good afternoon. My name is Paula Quest, and I represent the accolades in this case, Abbott Laboratories, Abbott Laboratories, Inc., and Abbott Vascular, Inc. The perplexed device at issue is one of the small minority of plastering medical devices that occupies a unique space in the law of medicine. The device is inserted into the human body to suit your access sites, following catheterization procedures to perform and treat life-threatening cardiac and other vascular conditions. By definition, the device is one that either supports or sustains human life, is one of substantial importance in preventing impairment of human health, or presents a potentially unreasonable risk of illness or injury. So your adversary is telling us that he's not challenging the PMA, he's challenging your client's compliance with the PMA. Would there be a cognizable theory of product liability if, in fact, your client acted in derogation of the PMA? If the claimant pled sufficient facts to plausibly suggest a violation of the PMA, connecting that violation to the alleged injuries and also identifying an identical state law requirement, then there is a path forward through express reaction. But the plaintiffs haven't done that here. What they have alleged, simply, as your honors noted, that there was an incident associated with the use of a device, and, therefore, you must infer a manufacturing defect. That is not the law in Pennsylvania, and that's not the law in this circuit. These devices cannot work as intended for a variety of reasons that have nothing to do with something being wrong with the manufacturing process. The FDA has approved instructions for use, portions of which are attached to the third amendment complaint, and they explain exactly why an incident like this might happen. For example, in our appendix 207, number 8, specifically says why a foot might not retract to a closed position, and it specifically contemplates that there may be vessel trauma if that happens. Precaution number 8 says do not apply excessive force to the lever when returning the foot to its original position. It goes on to include other language, but it says failure to put the lever down, which is what we see from the MDR when the MDR is reporting this complaint, says it can cause breakage of the device and will lead to vessel trauma, which may necessitate intervention and or surgical removal of the device and vessel repair. Ms. Quist, let me ask you this question, if I could. The Medical Device Act passed in 1976, I believe, correct? That's right, Governor. Okay. And, of course, Twombly and Iqbal were decided by the United States Supreme Court, I think, in 2008, all right? You know, isn't it a little bit, it seems to me like the Medical Device Act allows you in a situation like this to hide the ball, and it becomes impossible for someone who's injured by a defective device to be able to ascertain what the defect is without knowing the procedures you went through to get the PMA and without having a chance to evaluate the actual device, which under the regulations, I understand, one of your salespeople was required to make sure it got back to you. So, you know, why isn't that, I mean, I don't think that the MDA, when the MDA was written, I don't believe anybody could have foreseen Iqbal and Twombly, and I know that one was an antitrust case and the other applied the pleading standard to all their cases. I'm not sure that the Medical Device Act is a case where that works particularly well. Judge Fischer, plaintiffs plead plausible claims without the PMA all of the time, including, for example, the Funk and the Basque case, which we cited in our brief. And in those cases, in Basque and in Funk, the plaintiffs in those cases were able to plead plausible claims without the PMA, including, for example, in Basque, the plaintiffs specifically alleged that there was excess bioburden and excess manufacturing residuals on the device. They connected those alleged manufacturing defects to the injuries alleged in the case, and the court said in Basque these are enough to state a plausible claim going forward. It was done without the PMA. Similarly, in Funk. Let me just follow up on that. Let's just say that the plaintiff in this case just didn't even care about the PMA. I just want to state a good old-fashioned state law claim. Let's say he didn't know about the medical device amendments. Let's just say he brought a nice claim under Pennsylvania law that just said, hey, look, under Pennsylvania law, I think there's a problem here. I think what you would do is what you would say then, well, shoot, that looks like that's preempted. If you wanted to start a preemption defense because you say, hey, we got this MDA, and we've got PMA protection for anything that would go in the PMA. At that point in time, though, in order to assert your affirmative defense, wouldn't you have to reveal what the PMA was so that you could find out if the state court claim that was dutifully alleged, validly alleged under state court fell within the PMA? It's not the plaintiff's burden to plead a nonpreemptive claim any more than it's a plaintiff's burden to plead a claim that's not barred by laches or any other affirmative defense. A plaintiff's not to say at the end of their complaint, oh, there wasn't undue delay, no one's prejudiced, therefore laches doesn't apply. A plaintiff doesn't have to plead something that is not preemptive. They can plead whatever they want, and then you would have to come forward with a preemption claim to say, aha, this is the PMA. This is where your state law claim fails because it's not parallel to the PMA. And so how can we ever honor an affirmative defense that doesn't include the text of the PMA, whether it's under seal or otherwise? First, you can be legal next clear that the first preemption clause of the MDA, by definition, bars state claims unless there's an alleged violation of a PMA federal requirement. I don't think that Regal converts preemption into a pleading requirement for plaintiffs. I think Regal still keeps preemption as affirmative defense for manufacturers. Regal says that the plaintiffs never asserted a parallel claim, and therefore, by definition, the claims that the plaintiffs have asserted were expressly preempted by the MDA. Courts across the country, including Shuker, the Third Circuit's opinion in Shuker, say that a plaintiff must identify a state of parallel claim in order to move forward. That's true in Shuker, that's true in Buck, that's true in Bass, that's true in the Malicki case. Every circuit court across the country has said to go forward under the express preemption provision of the MDA. The plaintiff has to state a possible parallel claim. So that's for a plaintiff to get a path to victory. I totally agree with path to victory. If they want to recover, they have to state a parallel claim. But this is a procedure question. Why isn't it sufficient for a plaintiff to just show up with a state law claim, and then in order to act on, and many of those cases you decided were summary judgment cases. Very few of those were 12b6 cases. And why isn't it then the obligation of the defendant to say, aha, preemption is affirmative defense, this is the PMA, this is what the PMA requires, and your claim is not parallel based on what the PMA requires. And hence the black box problem that Judge Fischer alluded to isn't present. If we were to take this at a later stage, not now, where you want the benefit of preemption without ever revealing the PMA. I have a couple of different responses to that. One, the courts in this circuit have made clear where affirmative defense is evident from the basis of the complaint. And it is in this case. Plaintiffs allege both that the ProClose device is PMA approved. They also purport to state a parallel claim, one that is not granted by federal law. So plaintiffs themselves put an issue in the complaint. But secondly, and courts have often found that this issue can be decided on in a motion to dismiss without the benefit of discovery. But to your other point, Judge, that's setting aside preemption, the plaintiffs here haven't stated a possible claim under Pennsylvania law. Why shouldn't the missing device be, why shouldn't there be an inference against you out of the complaint because of the missing device? Your people had the obligation to get that device back to you.  Doesn't that give them an opportunity to at least get to the discovery stage? I have a couple of responses to that, Judge Fischer. One, plaintiffs, I think you asked whether the issue was raised in the proceedings below. It was absolutely not raised in the proceedings below. Plaintiffs never, ever once alleged that Abbott's alleged foliation of this device should create an inference that there is a defect here. It was a complete surprise to us in this appeal when this issue was raised for the first time. Second, the second amended complaint says very specifically that the device was not returned to us. The user report that we entered in that issue specifically says, that the hospital says that Exhibit C to the third amended complaint, that it did not return the device to Abbott. So plaintiffs may say we should have tried to get it back, but the fact of the matter is that the user facility says it didn't return the device to Abbott, so there can't be any imporrect. While we can try to get it back, at the time the product is dispersed into the stream of commerce, it's no longer Abbott's product. It's the hospital's product. It's the plaintiff's product. There is no obligation in the law or otherwise that allows us to get the product back for inspection. We've cited that in our briefs, and to the extent that there is a law that requires us to get it back to inspect it, it's preempted because it would impose requirements that are different than or in addition to any federal requirement. There's no federal requirement that allows us to even ask much less demand that we get the device back. What do we do with the expert report here? Pretend that it wasn't attached. Pretend for the moment it was not attached, and all your adversary did was copy and paste, as he did in the third amended complaint, the factual allegations. Can we accept those factual allegations as true? And if we can, are they sufficient to state a claim? And if not, why not? You cannot accept those allegations as true because their opinion is not fact, so they're conclusory ones at that. All the expert says here is that there was an incident in which an alleged injury occurred. There were two other devices that, in our view, are completely dissimilar incidents. But even if you assume that the two incidents are the same, you have three incidents in which the device did not work as intended. That does not lead to a plausible inference that the device contained a manufacturing defect. Again, we see in the literature, we see in the instructions for use how these can happen, for reasons that have nothing to do with either practice. Is there anything in the record as to how many instruments there are in a lot? There was some discussion of that during the proceedings below. There's around, I think there's about 1,000 instruments in this lot. So the three out of the 1,000 is .0009% of the lot. Did you say 1,000 or 5,000? I think, you know, I'm sorry, Judge Fisher. It's in the transcript of the last hearing. I don't have it immediately in front of me. But it's three devices out of the lot, which is something like .0009% of the lot. I thought it was 3,200. I thought it was 3,200 in a lot. That's what I recall from the record, 3,200. And I apologize to both of you. I don't have the number immediately at the ready, but it is in the record. But that 3,200 sounds about right. So is your argument really that this is a pleading problem, not a preemption problem? We think it's both, but it's certainly both. Even if you set aside preemption, they have a pleading problem. In order to state a plausible non-preemptive claim, they have to allege sufficient facts. But I don't know that they have an obligation to state a non-preemptive claim. I wasn't asking that, Judge Phipps. I wasn't trying to answer. No, no, no, no. I was asking that to Ms. Quist because she said that it's a little bit of both. And so you keep coming back to the fact that there seems to be this imposition on a plaintiff to state a non-preemptive claim. Plaintiffs can state whatever claim they want as long as they state a good claim. And then defendants can come and say, oh, no, forget it. That's preemptive. My question was going to simply that. Was there, putting aside preemption, is your argument he does not state a state law claim? It is, Judge Schwartz. And here's why. Under Pennsylvania law, in this particular circumstance, you can't use res ipsa to create an inference that there was a manufacturing defect in this case. Res ipsa can be used only in circumstances in which an event would occur without, would not have occurred without the negligence of the manufacturer. We know from the literature, from the instructions for use in this case, that these kind of devices, class 3 devices, may not work as intended for a variety of reasons, including patient anatomy. Remember, this device is inserted into an artery that's being treated for severe complications, plaque, et cetera, surgical technique. So there are a variety of other reasons why this device didn't necessarily work as intended that have nothing to do with the way the device is manufactured. So setting preemption completely aside, the plaintiffs here haven't stated a plausible claim under Pennsylvania law either. Are they obligated to plead or rule out other causes? In this case, they're relying on res ipsa. So while they aren't necessarily required to plead alternative causes, they can't plead a claim that doesn't rise above a speculative level. Just because it's conceivable or possible that there was an issue with this device doesn't make it plausible under Twombly and Pickball. And under this circuit's precedent in Santiago, in the case just recently decided 11 days ago in Ray Allergan, conclusions are not enough. The plaintiff must plead facts to raise a claim from possible to plausible. And the plaintiffs haven't done that here. Okay, thank you. Let me just see if Judge Fischer has any other questions. I have none. Judge Fitz? No, thank you. Okay, thank you. Thank you for your argument. Thanks for your time. Thank you, Your Honor. I just want to briefly get into what the heart of the question is here again, I think, which is whether or not you can raise a plausible claim based on the evidence that we pleaded in the Third Amendment complaint. And we think that certainly you can. The Seventh Circuit created an extremely lax pleading standard that has been adopted in that circuit. Other circuits have taken a more… Now, on that case, you don't ask us to follow, Bosch. No, sir, I don't. I'm just bringing it to the court's attention to show that case is actually an excellent case to explain what's going on in the PMA process and these cases generally, and also to identify the issue that's going on. Yeah, but how does it inform our decision? Just to show that there is a range of opinion on how to approach what the standard should be. My opponent wants you to apply Williams, which is a non-presidential Third Circuit case for the proposition that a plaintiff in these types of cases needs to prove both exactly what the mechanism of failure was and that that mechanism is in derogation of the PMA. We don't think that to state a plausible claim under quorum of the amicable, you need to go that far. We think that relying on an expert who has done statistical analysis on this, relying on the fact that there were other incidents in this manufacturing lot—I'll point out 3200 was never pleaded anywhere, so I don't think the court can rely on it. Also, that the device, we believe, should have been returned, and now Abbott is saying in a submission several months after the failure said—and this is attachment B to the complaint—we don't have that device, even though industry practice is to absolutely have that device returned. We think that all those things combine together to allow you to plead a plausible case that doesn't necessarily need to push you all the way over to the Williams standard. How do we handle the fact that your adversary pointed out, and it's in the record, that one of the—I guess it's called a contraindication or a potential risk is the type of episode that actually happened here? If that's in front of us, it's in the complaint, how can we say that was not reasonably contemplated by an approved process? Your Honor, because even though it was contemplated by the device that would have conformed to the PMA, it's very possible that this device was manufactured in derogation of the PMA, and it's very possible that, say, there was a missing prong on the foot. If that were the case, then even though it was contraindicated, if there were a manufacturing defect, you would still be able to get around the preemption. Is there something different between very possible and plausible? Yes, I think there's a big difference between very possible and plausible. I think plausible is you're just setting out facts that say something could be here. It's something that's plausible. It's somewhat the difference between a probable cause hearing in criminal law and clear and convincing evidence. A probable cause hearing, you basically say these things happened. It's possible, it's probable that it happened, and you move forward. Very possible gets you in the realm of proof for a jury, and that's not where we're at. We're at the 12B6 stage. Okay. Judge Fischer, do you have any further questions for counsel? I do not. And Judge Phipps? No, I don't. Okay. We thank counsel for their very helpful arguments and your helpful briefing. The court will take this matter under advisement, and on behalf of the panel, I hope you continue to stay safe and stay healthy, and thank you for your time and patience. Thank you, Judge.